CELIA McGUINNESS, Esq. (SBN 159420)
DERBY, McGUINNESS & GOLDSMITH, LLP
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone:  (510) 987-8778
Facsimile:  (510) 359-4419
Email: info@dmglawfirm.com

ANTHONY GOLDSMITH, Esq (SBN 125621)
DERBY, McGUINNESS & GOLDSMITH, LLP
21550 Oxnard Street, Suite 300
Woodland Hills, CA  91367
Telephone: (818) 213-2762
Facsimile: (510) 359-4419
Email: info@dmglawfirm.com

Attorneys for Plaintiff
STEVEN WHITE

IN THE UNITED STATES DISTRICT COURT
IN AND FOR NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WHITE, an individual,<br><br>                        Plaintiff,<br>    v.<br><br>ALAMEDA-CONTRA COSTA TRANSIT DISTRICT,<br><br>                        Defendant. | CASE NO.<br><br><u>Civil Rights</u><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §12101, *et seq*.)<br><br>2.  Violation of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §§794, *et seq*.)<br><br>3.   Violation of California Civil code §§54 and 54.1, *et. seq.*<br><br>4. Violation of California civil code §51<br><br>5. Violation of California Gov. Code §11135<br><br><u>DEMAND FOR JURY TRIAL</u> |

## INTRODUCTION

1.   This case involves the systemic and long term failure and refusal of Defendant ALAMEDA-CONTRA COSTA TRANSIT DISTRICT ("Defendant" or "AC TRANSIT") to properly transport, load and secure the wheelchair of Plaintiff STEVEN WHITE  ("Plaintiff" or

"Mr. White ") and other similarly situated persons when traveling on their buses. Mr. White as defined by both California and federal law, is a qualified person with a disability and is regularly confronted by and suffers discomfort, difficulty, embarrassment, and fear when using or attempting to use AC TRANSIT buses. AC TRANSIT and its drivers are aware of their duties to properly transport, load and secure the wheelchairs of persons like Plaintiff, and their failure and refusal to comply with those duties violates Mr. White's s civil rights as established by federal and California state law. As a result, Plaintiff seeks injunctive relief, recovery of damages for both past and continuing violations of his civil rights, and recovery of reasonable attorney fees, litigation expenses, and costs.

**JURISDICTION AND VENUE**

2.   This Court has jurisdiction over Plaintiff's claims brought under federal law pursuant to 28 U.S.C. § 1331 based on the First Claim (Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*. (the "ADA") and the Second Claim (violation of the Rehabilitation Act of 1973 29 U.S.C. §794 et seq.)  This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367(a) as all of the State law claims arose from a common nucleus of operative facts and out of the same incidents.

3.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's causes of action arose in this District and Defendant maintains its principal place of business in this District.

**PARTIES**

4.   Plaintiff STEVEN WHITE is, and at all times relevant to this Complaint was, a citizen of California residing in Alameda County.  Mr. White  requires the use of a wheelchair for mobility and therefore is a "physically disabled person" and a "person with disabilities," as these terms are used under California and federal laws, including, but not limited to § 504 of the Rehabilitation Act of 1973 and the ADA as well California Government Code §12926.

5.   Defendant AC TRANSIT is, and at all times relevant to this Complaint was, a public entity organized and existing and/or operating under the laws of the State of California. Plaintiff is

informed, believes, and thereon alleges, that Defendant AC TRANSIT is a public entity which operates and provides public transportation services in and for the Counties of Alameda and Contra Costa. Among its many services to the public, AC TRANSIT operates a "fixed route bus system." A fixed route bus system, as defined under 42 U.S.C. §12141(3), means "a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule."

## GOVERNMENT CLAIM FILED

6. A proper and timely tort claim was presented to AC TRANSIT on August 28, 2019. A supplemental Claim was filed on September 5, 2019 (the "Claim"). The Claim was not rejected or accepted.

## FACTUAL BASIS FOR COMPLAINT AGAINST ALL DEFENDANTS

7. Plaintiff is a person with a disability and a "qualified" person with a disability as defined by Government Code §12926 and 42 U.S.C. §12131(2). He uses a wheelchair for mobility.

8. Mr. White takes uses AC TRANSIT on a periodic basis for non-work-related transportation around the Bay Area. He has experienced a number of instances where poorly trained drivers failed to properly secure him once he was on board AC Transit buses. However, because he was able to use the busses despite these dangerous and illegal failures to properly secure him, he did not complain about past incidents.

9. On July 5, 2019, however, Mr. White experienced two incidents of outrageous, intentional discrimination from the same bus driver on the same day for two different trips while he was traveling the 72R, #1081 Bus from while travelling from his home in Hayward to San Pablo (having boarded in El Cerrito).

10. After taking BART from his home in Hayward to the El Cerrito Del Norte station, he wheeled to the bus stop. His phone app told him the bus was arriving soon, at or about 2:54 p.m. There was a crowd of persons waiting for the bus. Not wanting to be missed by the Bus Driver in the crowd, Claimant excused himself through the crowd to the curb so the driver could see him.

11. The bus passed Plaintiff.  After stopping several feet ahead of him, the doors open, and the driver allowed all the able-bodied passengers to load first.  Plaintiff had to move to the end of the crowded line.  When he came to embark the bus, the driver looked down at him and did not extend the ramp. She told him the bus was full and he would have to wait for the next one.  Mr. White asked why she had let everyone on first and that it looked like the bus was not actually full.  Plaintiff took out his phone to take pictures of the bus.  The driver then closed the door saying that she "didn't care" and pulled the bus away.

12. This was all witnessed by a stranger to Plaintiff, a woman named Delores, whose full name and contact information are in the possession of attorneys for Plaintiff.  The witness told Plaintiff that the driver said she didn't care what Plaintiff had said or needed.  She offered her contact information in the event he would report it. Plaintiff also tried calling AC Transit customer service number but could not reach anyone to complain.

13. Plaintiff took the next bus at 3:15 pm. The driver let him on first, then the other passengers.  Plaintiff travelled to San Pablo from the El Cerrito Del Norte BART station without incident.

14. Plaintiff returned to the bus stop in San Pablo at approximately 4:00 pm to return to the El Cerrito Del Norte BART Station.  The bus driver that pulled up was the same bus driver that had denied Plaintiff entry to the bus earlier that same day.  Plaintiff video recorded the interactions on two videos. The driver said words to the effect of "oh, it's you again."  The  video depicts that after Plaintiff said he would like to get on the bus the driver, asked the  entire bus  is anyone would like to get up so that Plaintiff could get loaded into the bus   The driver did not instruct the passengers to move to allow Plaintiff a space.  Instead, she gave the passengers the option to deny Plaintiff a ride by keeping their seats, bringing unwanted attention and embarrassment to Plaintiff.

15. Once there was agreement from the passengers on the bus that Mr. White should be allowed on, the driver then lowered the lift and he was allowed to enter the bus, using his standard size and configuration, manual wheelchair.  Upon looking at Plaintiff's chair, the driver asked, "You got four points on this chair?" Claimant told her he did not know what that meant.  She then said, "you don't have it" and walked away.  She then said that she could not transport him because he did

not have straps.  Claimant then requested a supervisor. Later in the video the driver is heard saying that without the four-point straps drivers cannot transport disabled persons because a few weeks ago, AC Transit "changed the law."  She tells other passengers that she cannot drive the bus because Claimant does not have "securements."  Claimant points out to the driver that all the equipment is available on the bus.  Thereafter, nearly all the passengers eventually disembarked the bus, which the driver blamed on Mr. White, causing him embarrassment.  After most of the passengers had left, and approximately 30 to 45 minutes passed, the supervisor, Hector Perdomo (#32388), arrived on the scene.

16.   The supervisor, after looking at Claimant, asked the driver, "What is the problem?" She responds that Mr. White did not have "four points."  The supervisor proceeded to show the driver how to secure Claimant with the existing equipment and left the bus with her to speak with her privately.  The supervisor returned to the bus and took down Plaintiff's name.  The driver then to secured Plaintiff. She then complained that her back hurt.  The supervisor and driver then returned outside.

17.   The supervisor finished securing Mr. White and left the bus. The supervisor, on information and belief, then followed the bus in his own vehicle to Mr. White's destination at the Del Norte BART station.  He stopped Plaintiff and wanted to ask him more questions about the incident, which Plaintiff answered.  Later, around 5:30 pm, the supervisor called Plaintiff, and he called a second time around 8:30 pm on a Friday night.  By the time the last call was received, Plaintiff felt harassed by the level of communications in such a short period of time and the late hour.

18.   Plaintiff alleges that Defendant's buses are difficult or dangerous for him to use in his wheelchair because of the failure of Defendant and/or its driver employees and/or agents to have and maintain securement equipment  in a useable condition, to comply with their duty to secure wheelchairs and to safely load and unload passengers with disabilities.  Plaintiff further alleges on information and belief that Defendant fails to train drivers to proficiency in the use of securement devices and equipment. Plaintiff is informed and believes and based therein alleges that AC TRANSIT is well aware of its failings in securement and the failure of drivers to load and unload

passengers with disabilities but has knowingly and recklessly allowed the conditions experienced by Plaintiff and those similarly situated to persist.

19. Pursuant to the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, California Civil Code §§ 51 and 54 and 54.1 and other State laws and regulations (collectively, "Disability Rights Laws"), AC TRANSIT is required to properly transport persons in an accessible and safe manner. It is required to properly load, secure and transport passengers like Mr. White and train its drivers to proficiency in the operation of securement equipment. It is also required to maintain securement equipment in an operable manner. These duties are non-delegable.

20. Plaintiff is informed and believes and based thereon alleges that Defendant's failure to meet its obligations and duties under Disability Rights Laws was both intentional and/or in reckless disregard of his rights and his safety.

21. Plaintiff seeks an injunction to force Defendant to alter its policies and practices to comply with Disability Rights Laws and claims damages for violations of his civil rights under California and federal law in an amount according to proof; including, but not limited to, damages under Title II of the ADA, Section 504 of the Rehabilitation Act of 1973 and §§ 54.3 and 52 of the California Civil Code. He seeks reasonable attorneys' fees, litigation expenses and costs under the aforementioned statutes.

**FIRST CLAIM**
**VIOLATION OF TITLE II OF THE AMERICANS**
**WITH DISABILITIES ACT OF 1990**
**[42 U.S.C. § 12131]**

22. Plaintiff re-alleges and incorporates by reference, as though fully set forth hereafter, each and every fact and allegation contained in the preceding paragraphs.

23. At all times herein mentioned, Plaintiff was entitled to the protections of Title II of the ADA, which prohibits discrimination by any public entity as defined by 42 U.S.C. section 12131. Pursuant to 42 U.S.C. 12132, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the "services, programs or activities" of a public entity, or be subjected to discrimination by such entity. Plaintiff was, at all

times relevant herein, a qualified individual with a disability for all purposes under the ADA.

24. Plaintiff alleges that Defendant AC TRANSIT provides public transportation services, programs and activities, including, *inter alia*, the operation of a fixed route public transportation, entitling Plaintiff, and others with disabilities, to protection from discrimination under Title II as it applies generally to public entities [42 U.S.C. §12132, *et seq.*] and specifically to public entities that provide transportation services [42 U.S.C. §12141, *et seq.*]. Plaintiff alleges that the manner in which Defendant provides these services, and the policies and practices under which Defendant operates are discriminatory and, have denied, and continue to deny and exclude, Plaintiff from full and equal access to and participation in the benefits of Defendant's programs, services, activities in violation of 42 U.S.C. §12132.

25. Plaintiff alleges that Defendant AC TRANSIT operates designated public transportation as defined in 42 U.S.C. §12141(3) and 49 C.F.R. §37.3.

26. Plaintiff's physical impairments substantially limit major life activities, including standing and walking. Plaintiff cannot perform the above-noted major life activities in the manner, speed and duration when compared to the average person. Moreover, Plaintiff has a history of or has been diagnosed and/or classified as having a physical impairment as required by 42 U.S.C. §12102(2)(B).

27. In violation of its duties under Title II of the ADA and the regulations enacted thereunder, Defendant has failed and continues to fail to provide training, supervision and discipline to their operators/drivers and other employees, as well as contractors and agents or sub-contractors and sub-agents. These acts and/or omissions constitute discrimination in violation of Title II as well as regulations enacted thereunder; including 49 C.F.R. §37.5 For example, pursuant to 49 C.F.R. §37.165(c), Defendant must provide and use a securement system to ensure that a wheelchair remains within the securement area. Pursuant to 49 C.F.R. §37.165(f), Defendant must provide effective securement and assistance to individuals with disabilities in connection with the use of securement systems. Needless to say, Defendant and its drivers may not humiliate or ignore people with disabilities or seek to keep them from being safely transported. Defendant has failed and repeatedly fails to meet its obligations. Pursuant to 49 C.F.R. §37.173, Defendant is also required

to provide training to proficiency in the proper operation and maintenance of accessibility features and equipment, including securement equipment for wheelchairs and keep the equipment maintained and operational.

28. Defendant completely fails to meet the requirements of federal law.

29. As alleged in this Complaint, Defendant failed and refused to reasonably modify their policies, practices and procedures in that they failed to implement a scheme, plan or design to assist Plaintiff and/or others similarly situated in utilizing Defendant's services, as required by the ADA.

30. Based on the facts plead above, Defendant failed and refused to implement and enforce policies, practices and procedures to safely transport Plaintiff and/or others similarly situated, as required by the ADA.

31. In violation of Title II of the ADA, the Defendants have failed to ensure that individuals with physical disabilities, such as Plaintiff, have access to and are not excluded from the "services, programs and activities" of its public transportation system. By reason of the Defendant's discriminatory practices and policies regarding the failure to provide and maintain public transportation systems so that they are "accessible to and useable by" mobility impaired persons, Defendant has intentionally discriminated against Plaintiff, in violation of Title II of the ADA and the regulations adopted to implement the ADA. The refusal to comply with the law and on information and belief, their own stated policies has prevented Plaintiff and other people similarly situated, from meaningful, full and equal participation in Defendant's primary service: transportation. Maintaining transportation systems in an accessible condition is a critical part of Defendant's duties under Title II of the ADA.

32. Based on the discriminatory conduct of Defendant in violation of the ADA and other disability access laws as articulated in this Complaint, Plaintiff was damaged and will suffer irreparable harm unless Defendant is ordered to abide by the requirements of the relevant federal and State disability access laws. Plaintiff alleges that Defendant's discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges that there is a national public interest in requiring

accessibility in public transportation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendant. Accordingly, Plaintiff alleges that a mandatory injunction, including a paid monitor, is necessary to ensure that Defendant complies with the applicable requirements of the ADA and State law. Plaintiff is informed and believes and based thereon alleges that the acts and omissions of AC TRANSIT that have allowed a failure in its securement policies, training and monitoring constitute intentional misconduct and/or deliberate indifference.

33. As a direct and proximate result of the Defendant's violations of the ADA, Plaintiff sustained the losses, and damages alleged herein, and is entitled to the relief set forth in the Prayer, *infra*, including all injunctive relief, damages and penalties allowed under federal law, attorneys' fees, costs and litigation expenses.

**SECOND CLAIM**
**VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973**
**[29 U.S.C. § 794]**

34. Plaintiff re-alleges and incorporates by reference, as though fully set forth hereafter, each and every fact and allegation contained in the preceding paragraphs.

35. Plaintiff alleges that Defendant has discriminated against him and violated his rights under Section 504 of the Rehabilitation Act of 1973 (Section 504), which provides, in pertinent part,: "[N]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance…" 29 U.S.C. §794.

36. Pursuant to 29 U.S.C. §705(20)(B), Plaintiff is a qualified individual with a disability within the meaning of Section 504 because he has a physical impairment that substantially limits one or more major life activities.

37. Plaintiff is informed and believes and based thereon alleges that at all times relevant to this action, Defendant was/is a recipient of federal funding within the meaning of Section 504.

38. By its acts and omissions described herein, Defendant violated and continues to violate Section 504 by excluding Plaintiff from participation in, denying him the benefits of, and

subjecting him to discrimination in the benefits and services Defendant provides to passengers who do not have disabilities.

39. Based on the discriminatory conduct of Defendant in violation of Section 504 and other disability access laws as articulated in this Complaint, Plaintiff was damaged and will suffer irreparable harm unless Defendant is ordered to abide by the requirements of Section 504 and other relevant Disability access laws. Plaintiff alleges that Defendant's discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges that there is a national public interest in requiring accessibility in public transportation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendant. Accordingly, Plaintiff alleges that a mandatory injunction, including a paid monitor, is necessary to ensure that Defendant complies with the applicable requirements of Section 504 and state law. Plaintiff is informed and believes and based thereon alleges that the acts and omissions of AC TRANSIT that have allowed a failure in its securement policies and training constitute intentional misconduct or deliberate indifference.

40. As a direct and proximate result of Defendant's violations of Section 504, Plaintiff sustained the losses, and damages alleged herein, and pursuant to 29 U.S.C. §794(a), is entitled to damages, injunctive relief, attorneys' fees, costs and litigation expenses.

### THIRD CLAIM
### DENIAL OF FULL AND EQUAL ACCESS
### IN VIOLATION OF THE DISABLED PERSONS ACT
### [CAL. CIV. CODE § 54 AND 54.1]

41. Plaintiff re-alleges and incorporates by reference, as though fully set forth hereafter, each and every fact and allegation contained in the preceding paragraphs.

42. Plaintiff alleges that Defendant has discriminated against him and violated his rights under §§ 54 and 54.1 of the California Civil Code, also known as the Disabled Persons Act (DPA). At all times relevant to this Action, the DPA provides that physically disabled persons are not to be discriminated against because of their physical disabilities and shall have full and equal use of AC TRANSIT'S public transportation services.

43. Section 54.1(a) (1) of the California Civil Code states that: "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all *common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided)* …and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." (emphasis added)

44. Plaintiff is an individual with a disability as defined in California Government Code §12926 and is therefore protected from discrimination in places of public accommodation and transportation under the DPA.

45. Defendant provides public transportation services as identified in California Civil Code § 54.1(a)(1) and is therefore subject to the provisions of the DPA prohibiting discrimination against individuals with disabilities.

46. Pursuant to California Civil Code § 54.1(d), a violation of the rights of an individual under the ADA also constitutes a violation of the DPA.

47. Defendant's discriminatory practices and policies regarding the failure to provide and maintain its public transportation systems so that the system is accessible to and useable by Plaintiff and other mobility impaired persons, and refusal to comply with the law and (on information and belief) its own stated policies, has denied Plaintiff and other people similarly situated, full and equal use of Defendant's public transportation program. These acts, omissions, policies and practices were and are in violation of the ADA and the DPA.

48. As a direct result of the wrongful actions of the Defendant in violation of the DPA, Plaintiff has personally experienced, suffered and continues to suffer emotional distress not limited to fear, anxiety, humiliation and isolation from each incident where he was denied securement of his wheelchair, and/or was humiliated or denied a ride , leaving him deterred from using AC TRANSIT buses as often as he otherwise would , all to his general damages in an amount according to proof.

49. Section 54.3 of the California Civil Code provides that any person, firm or corporation that denies or interferes with the rights of an individual with a disability under the DPA, shall be liable for each such offense for the actual damages, and up to three times actual damages, but in no case less than $1,000, and such attorneys' fees and costs as may be determined by the Court.

50. As a result of Defendant's wrongful and illegal actions, Plaintiff is entitled to an award of up to three times the amount of actual damages, but in no case less than $1,000.00 per violation, pursuant to Civil Code §54.3.

51. As a further result of Defendant's illegal actions, Plaintiff has incurred attorneys' fees and costs in pursuing this action. Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to Civil Code§ 54.3.

**FOURTH CLAIM**
**DENIAL OF EQUAL ACCESS BY A BUSINESS ESTABLISHMENT**
**VIOLATION OF UNRUH CIVIL RIGHTS ACT**
**[CAL. CIV CODE § 51]**

52. Plaintiff re-alleges and incorporates by reference, as though fully set forth hereafter, each and every fact and allegation contained in the preceding paragraphs.

53. Plaintiff alleges that Defendant has discriminated against him and violated his rights under §51 of the California Civil Code, also known as the Unruh Civil Rights Act (the "Unruh Act").

54. *California Civil Code* §51(b) provides, in pertinent part:

> "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

55. Plaintiff is a disabled person or has a disability as defined by §§ 12926 and 12926.1 of the California Government Code.

56. Defendant is deemed to be a business establishment because it is, or is a part of, a public agency that provides the services of a common carrier.

57. Section 51(f) of the California Civil Code provides that a violation of the ADA also

- 12 -
COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

constitutes a violation of the Unruh Act.

58. Defendant's discriminatory practices and policies regarding the failure to provide and maintain its public transportation systems so that the system is accessible to and useable by Plaintiff and other mobility impaired persons, and refusal to comply with the law and (on information and belief) its own stated policies, has denied Plaintiff and other people similarly situated, full and equal use of Defendant's public transportation program. These acts, omissions, policies and practices were and are in violation of the ADA and the DPA. These acts, omissions, policies and practices were and are in violation of the ADA and the Unruh Act.

59. As a direct result of the wrongful actions of the Defendant in violation of the Unruh Act, Plaintiff has personally experienced, suffered and continues to suffer emotional distress not limited to fear, anxiety, humiliation and isolation from each incident where he was denied a ride or proper securement of his wheelchair, and/or had to argue with driver about providing transit services. Plaintiff is deterred from riding AC TRANSIT buses as often as he would otherwise do., all to his general damages in an amount according to proof.

60. Plaintiff is informed and believes and based thereon alleges Defendant's violations of disability access laws, including the violations of Plaintiff's rights under the Unruh Act and the ADA as detailed above, are systemic, gross and/or patent and Defendant AC TRANSIT has intentionally allowed these systemic violations to continue despite being aware of the violations of federal law that they are allowing and/or creating and the risks of harm posed to Plaintiff and those similarly situated. Defendant's conduct is demonstrated, *inter alia*, by repeated deliberate indifference to the safety, needs and rights of Plaintiff and others similarly situated.

61. Section 52(a) of the California Civil Code provides that whoever discriminates in violation of the Unruh Act,

> "…is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages, but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Sections 51, 51.5, or 51.6."

62. As a result of Defendant's wrongful and illegal actions, Plaintiff is entitled to an award of up to three times the amount of actual damages, but in no case less than $4,000.00 per violation, pursuant to Civil Code §52.

As a further result of Defendant's illegal actions, Plaintiff has incurred attorneys' fees and costs in pursuing this action. Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to Civil Code§ 52.

**FIFTH CLAIM**
**VIOLATION OF CAL. GOV. CODE § 11135**

63. Plaintiff re-alleges and incorporates by reference, as though fully set forth hereafter, each and every fact and allegation contained in the preceding paragraphs.

64. Plaintiff alleges that Defendant has discriminated against him and violated his rights under §11135 of the California Civil Code (Section 11135).

65. Section 11135 prohibits discrimination against people with disabilities (and other protected classes of persons) by persons and entities in the operation of programs and activities that are funded directly by the State of California or that receive any financial assistance from the State of California.

66. Plaintiff is informed and believes and based thereon alleges that Defendant AC TRANSIT operates public transportation activities and programs that are either funded directly by the State of California or receive financial assistance from the State of California.

67. Defendant's discriminatory practices and policies regarding the failure to provide and maintain public transportation systems so that they are accessible to and useable by mobility impaired persons, and refusal to comply with the law and its own stated policies has denied Plaintiff and other people similarly situated, full and equal access to Defendant's public transportation program. These acts, omissions, policies and practices were and are in violation of Section 11135.

68. Based on the discriminatory conduct of Defendant in violation of Section 11135 and other disability access laws as articulated above, Plaintiff was damaged and will suffer irreparable harm unless Defendant is ordered to abide by the requirements of the relevant State and

federal disability access laws.  Plaintiff alleges that Defendant's discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community.  Plaintiff alleges that there is a State public interest in requiring accessibility in public transportation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendant. Accordingly, Plaintiff alleges that a mandatory injunction, including a paid monitor, is necessary to ensure that Defendant complies with the applicable requirements of the ADA and State law, such as Section 11135.

WHEREFORE, Plaintiff respectfully requests the following relief:

### PRAYER FOR RELIEF

A.     Issue a mandatory injunction under Title II of the ADA, Section 504 and §11135 of the California Government Code directing that AC TRANSIT:

1. Develop a comprehensive restraint and securement system policy for their own buses as well as those operated by contractors;
2. Train their drivers, operators and/or contractors to proficiency in their restraint/securement policy and in the use and operation of securement equipment;
3. Remove and replace defective, or ineffective restraint systems; and
4. Develop and implement ongoing evaluation, monitoring and enforcement of the restraint/securement system policy.

Plaintiff is not seeking injunctive or any other equitable relief under California Civil Code §55 or any other provision of the California Civil Code, Health & Safety Code or Government Code.

B.     Retain jurisdiction over the Defendant until such time as the Court is satisfied that Defendant's unlawful policies, practices, acts and omissions, and inaccessible and inadequate use and operation of securement equipment complained of herein no longer occur and will not recur.

C.     Award to Plaintiff all appropriate damages, including but not limited to statutory damages, special damages, general damages in an amount within the jurisdiction of the Court, according to proof under: (1) 42 U.S.C. § 12133, (for violation of Title II of the ADA, as set forth

in the First Claim) and (2) 29 U.S.C. § 794(a) (for violation of Section 504 of the Rehabilitation Act of 1973 as set forth in the Second Claim).

   D. Award Plaintiff a trebling of actual damages, but in no event less than $4,000 in damages pursuant to California Civil Code section 52 for each and every violation of California Civil Code section 51;

   E. In the alternative to the damages pursuant to California Civil Code section 52 in Paragraph D,, above, for a trebling of actual damages, but in no event less than $1,000 in damages pursuant to California Civil Code section 54.3 for each and every violation of California Civil Code section 54.1 and/or California Civil Code section 54;

   F. Award Plaintiff all reasonable attorneys' fees, litigation expenses and costs of this proceeding, as provided by 42 U.S.C. §12133 (for violations of Title II of the ADA), 29 U.S.C. §794(b) (for violations of Section 504 of the Rehabilitation Act of 1973) and under §54.3 for pursuing damages for violations of §§54 and 54.1 of the California Civil Code and under California Code of Civil Procedure §1021.5.

   G. Award prejudgment interest pursuant to California Civil Code §3291; and

   H. Grant such other and further relief as this Court may deem just and proper.

DATED: June 10, 2020      DERBY, McGUINNESS & GOLDSMITH, LLP

           By */s/Anthony Goldsmith*
             Anthony Goldsmith, Esq.
             Attorney for Plaintiff STEVEN WHITE

## DEMAND FOR JURY

Plaintiff hereby respectfully demands a jury trial in this action for all claims for which a jury is permitted, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  June 10, 2020            DERBY McGUINNESS & GOLDSMITH LLP


By */s/Anthony Goldsmith*
Anthony Goldsmith, Esq.
Attorney for Plaintiff STEVEN WHITE